**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| DAVID A. SCOTT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) NO. 2:14-CV-107 |
| LEAR CORPORATION, DARRELL | ) |
| HARPER, LARRY PAYNE, BARBARA | ) |
| SACHA, and RYAN BRUCKNER | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on Defendant Lear Corporation's ("Lear") Partial Motion to Dismiss, and Defendants Larry Payne, Barbara Sacha, Ryan Brueckner and Darrell Harper's (together, "Individual Defendants") Motion to Dismiss, filed on June 17, 2014. For the reasons set forth below, Lear's partial motion to dismiss is **DENIED**, and the Individual Defendants' motion to dismiss is **GRANTED**. The Individual Defendants are hereby **DISMISSED** from this case.

BACKGROUND

Plaintiff David A. Scott, Jr. ("Scott") was employed by Lear in its plant in Hammond, Indiana, between October 2010 and April 2013. (*See* DE# 1-9.) On or about August 11, 2013, Scott filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Lear, alleging that he

sustained a workplace injury and was required to work light duty assignments, but that Lear denied him reasonable accommodation, and eventually terminated his employment after he complained (1) about his treatment and (2) that Lear had afforded female employees with medical conditions more favorable treatment than male employees. (*See id.*) The EEOC issued its Dismissal and Notice of Rights on March 19, 2014. (DE #1 at 8.)

Proceeding *pro se*, Scott filed his complaint in this Court on April 4, 2014, using a preprinted "Employment Discrimination Complaint." (DE #1.) Scott's claims are being made pursuant to the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101), and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (42 U.S.C. § 2000e-s). Jurisdiction for these claims is based on 42 U.S.C. §§ 1331 and 1343(a). The complaint names Lear and the Individual Defendants (together, the "Defendants"), and alleges violations of the ADA, gender discrimination, retaliation, harassment, and wrongful termination. Regarding Scott's wrongful termination claim, the complaint states in part:

> On April 23, 2013 the defendants wrongfully terminated the plaintiff because of medical leave that they put me on because of a pending work related injury and wouldn't allow me to return to work under their policy so a grievance was filed on my behalf on the 24th of April 2013 but no steps or meetings were held for 320 day[s] and no contact to myself but straight to mediation and a denial of my grievance and being told that there [were] no other steps after mediation

-2-

> except to agree to this $4,000 settlement and drop all pending charges I have against the defendants and the union. My grievance was for being terminated for medical leave and didn't have anything to do with my other complaints or charges. . . .

(DE# 1 at 7.)

On June 17, 2014, Lear filed a partial motion to dismiss, seeking dismissal of Scott's wrongful discharge claim. (DE# 16.) On the same day, the Individual Defendants filed a motion to dismiss Scott's complaint against them. (DE# 19.) In support of both motions, the Defendants submitted unsigned copies of the collective bargaining agreement ("CBA") entered into by Lear's Hammond Indiana Plant and the International United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its affiliated Local Union 2335 ("Union"). (*See* DE## 21, 21-1, 22, 22-1.) The CBA was not attached to Scott's complaint.

Scott filed responses to both motions to dismiss on September 2, 2014. (DE## 25, 26.) In those responses, Scott acknowledged the existence of the CBA and asked that "the CBA agreement be added in for support of my complaints." (DE# 25 at 3; DE# 26 at 4.) On September 11, 2014, Scott also filed a "Motion in Response to Lear Corporation and Defendants Submission in Support to Dismiss," in which he asserted that

Lear and the Union never supplied him with a copy of the CBA during his employment.[1]  (DE# 27.)

The Defendants filed their reply briefs on September 30, 2014, attaching copies of two charges Scott had filed with the National Labor Relations Board ("NLRB") and the EEOC against the Union in 2012 and 2013, respectively.  (DE## 29, 30.)

On October 9, 2014, Scott filed two surreply briefs, attaching three more NLRB charges that Scott had filed against Lear and the Union in 2014, as well as his correspondence with the NLRB and the Union president.  (DE## 31, 32.)


DISCUSSION

Motion to Dismiss Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all facts alleged in the complaint as true, and draw all reasonable inferences in the light most favorable to the plaintiff.  *See Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citation omitted).  While a complaint is not required to contain detailed factual allegations, the plaintiff must allege facts that state a claim to relief that is plausible on its

---

[1] While entitled a "Motion," this two-page document seeks a denial of the Defendants' motions to dismiss, and therefore, will be treated as a supplemental brief in response to the motions to dismiss.

-4-

face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations and quotations omitted). A *pro se* complaint, "however inartfully pleaded," must be construed liberally, and is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quotation omitted); *see Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014).

When reviewing a motion to dismiss, the court generally considers the factual allegations of the complaint and any reasonable inferences that can be drawn from those allegations. *See Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The court may examine information from documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v.*

*City of Indianapolis,* 742 F.3d 720, 729 (7th Cir. 2014) (quotation omitted). Such documents may be considered by the court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. *See Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013). However, this is a "narrow exception" to the general rule that consideration of extraneous material requires conversion to a summary judgment motion. *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002). When extraneous materials are presented, it is within the court's discretion either to exclude the materials and handle the case as a straightforward motion to dismiss, or to consider the materials and convert to summary judgment. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). If the court chooses conversion, the parties must have "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Documents Submitted In Connection with the Motions to Dismiss

The parties submitted several documents for the Court's consideration in ruling on the Defendants' motions to dismiss: the CBA; multiple EEOC and NLRB charges filed by Scott against Lear and the Union; a letter from the NRLB to Scott; and email correspondence between Scott and the Union's president. (DE##

21, 22, 29-1, 29-2, 30-1, 30-2, 32-1, 32-2.) None of these documents were attached to or mentioned in Scott's complaint.

The Defendants ask the Court to consider the CBA, arguing that it is central to Scott's wrongful termination claim. Courts have considered collective bargaining agreements in ruling on motions to dismiss, even when they were not attached to a plaintiff's complaint. *See Minch v. City of Chicago,* 486 F.3d 294, 300 n.3 (7th Cir. 2007) (considering a collective bargaining agreement in resolving a motion to dismiss although it was not mentioned in the complaint, where plaintiffs' due process claim rested upon the agreement's provisions); *Anastos v. Honeywell Intern., Inc.,* No. 3:10-CV-208-TLS, 2010 WL 3526265, at *2 (N.D. Ind. Sept. 3, 2010); *Pabst Brewing Co., Inc. v. Corrao*, 176 F.R.D. 552, 556 (E.D. Wis. 1997).

While Scott's complaint does not specifically identify the CBA, it alleges that the Defendants fabricated that Scott had "violated the medical leave policy" in order to terminate his employment, and "wouldn't allow [Scott] to return to work under their policy." (DE# 1 at 6-7.) This "policy" presumably refers to the medical leave of absence policy provided in the CBA. (*See* DE# 22-1 at 34 ("Medical Leave of Absence" provision).) The complaint further alleges that "a grievance was filed on [Scott's] behalf . . . but no steps or meetings were held," presumably in violation of the CBA's multi-step grievance

procedure. (*Compare* DE# 1 at 7 *with* DE# 22-1 at 6-10 (CBA's "Grievance Procedure").) Scott does not contest the authenticity of the CBA submitted by the Defendants, and asks the Court to add the CBA in support of his complaint in his responses to the motions to dismiss.[2] (*See* DE## 25, 26.) Because Scott's complaint repeatedly refers to terms of the CBA, and his briefs acknowledge that the CBA is central to his wrongful termination claim, the Court will consider the CBA in ruling on the motions to dismiss.[3]

In support of their argument that Scott's wrongful termination claim is untimely, the Defendants submit two charges Scott filed against the Union in January 2012 and August 2013. Scott submits (1) three NLRB charges he filed against the Union

---

[2] While Scott filed a supplemental brief claiming that Lear did not provide him with a copy of the CBA during his employment (*see* DE# 27), he never asserts that he did not have a copy of the CBA, or was unaware of the terms of the CBA. The complaint's allegations indicate that Scott was aware of the CBA's terms at the time of his termination. (*See* DE# 1 at 6-7; *see also* DE# 32 at 3 (arguing in a subsequent surreply brief that Scott complied with the CBA's terms prior to termination, where Lear allegedly terminated Scott for not "follow[ing] [the] CBA agreement by not turning in medical/restriction notes to human resources which is false because [Scott] did turn in the said medical notes").)

[3] The Defendants submitted unsigned copies of the CBA without accompanying affidavits explaining why the CBA was not signed. (*See* DE## 21, 22.) Because Scott does not contest the CBA's authenticity, the Court will consider the CBA for the purpose of these motions. In future proceedings, any party seeking to rely upon the CBA should provide the Court with a fully executed copy of the CBA, or an explanation as to why no such copy is available.

and Lear in March and May of 2014, (2) a June 2014 letter from the NLRB to Scott, and (3) email correspondence between Scott and the Union president in 2013-2014. The Court finds that the narrow exception articulated by the Seventh Circuit does not apply to these documents, and will not consider them in deciding the Defendants' motions to dismiss. *See Metz v. Joe Rizza Imports, Inc.,* 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (refusing to consider documents submitted in response to motion to dismiss because they "are not central in determining whether Defendants engaged in these acts" alleged in the complaint). Because consideration of these documents would not change its analysis, the Court declines to exercise its discretion to convert the motions to dismiss into motions for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming district court's refusal to convert a motion to dismiss into a motion for summary judgment based on district court's discretion).

Scott's ADA and Title VII Claims against the Individual Defendants Must Be Dismissed Because They Fail as a Matter of Law

The Individual Defendants argue that Scott's ADA and Title VII claims against them should be dismissed because they were merely supervisors at Lear, and supervisors cannot be held individually liable under either the ADA or Title VII.

It is well-established in the Seventh Circuit that individuals who do not independently meet the statutory definition of "employer" cannot be held liable under Title VII or the ADA. *See, e.g., EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir. 1995) ("[I]ndividuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA."). Under both Title VII and the ADA, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person."[4] 42 U.S.C. § 2000e(b); *see* 42 U.S.C. § 12111(5)(A). A supervisor, in his individual capacity, does not fall within this definition of "employer." *See Williams v. Banning,* 72 F.3d 552, 555 (7th Cir. 1995). Thus, a "supervisor cannot be held liable in his individual capacity under the ADA or under Title VII." *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999).

While the Individual Defendants are not referenced in the body of Scott's complaint, the complaint does refer to "Lear's management team," "[Scott's] supervisor, human resources,"

---

[4]   The language designating "any agent of such person" as an "employer" was not intended to create liability for every agent of an employer. *See DeVito v. Chicago Park Dist.*, 83 F.3d 878, 882 (7th Cir. 1996). Agents are liable only if they otherwise meet the statutory definition of an "employer." "For example, an agent of an employer is not liable under the ADA unless it has the requisite number of employees and is engaged in an industry affecting commerce." *Id.* (internal quotations and brackets omitted).

"Lear[']s management team of supervisors and formans [*sic*]," "Lear's team of supervisors, formans [*sic*] and Human Resources." (DE# 1 at 3, 4.)   In his response brief, Scott identifies defendants Larry Payne as "Plant Superintendent", Darrell Harper as "Production Manager," Ryan Brueckner as "Director-Human Resources," and Barbara Sacha as "Human Resources Manager." (DE# 25 at 2.)  Scott argues that the Individual Defendants were not his supervisors, but rather, "people in management positions to protect the rights of employees when it comes to Lear's company policies, civil rights and the employee/employer signed contract under the [CBA]. . . ."  (*Id.; see also* DE# 31 at 1 (arguing the Individual Defendants "were not supervisors they were higher up in management").)    Regardless of Scott's terminology, his complaint does not allege any facts suggesting that Scott was employed by any of the Individual Defendants, or that they otherwise meet the definition of "employer" under Title VII or the ADA.   Thus, the Court can reasonably infer that none of the Individual Defendants were Scott's employer. Because the Individual Defendants cannot be held personally liable for the alleged Title VII or ADA violations, these claims against the Individual Defendants are **DISMISSED**.

<u>Scott's Wrongful Termination Claim</u>

The Defendants argue that Scott's wrongful termination claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and is a "hybrid" Section 301/fair representation claim ("hybrid Section 301 claim"). As such, they assert that this claim is subject to a six-month statute of limitations. The Court will first consider whether Scott's wrongful termination claim is a hybrid Section 301 claim before turning to the statute of limitations issue.

Scott's Wrongful Termination Claim Is a Hybrid Section 301 Claim

National labor policy strongly favors private over judicial resolution of disputes arising under a collective bargaining agreement. *See Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891 (7th Cir. 2010) (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965)). Thus, where an employer and a union have contracted to resolve disputes through a grievance and arbitration process, a union member-employee must avail himself of these dispute-resolution mechanisms before turning to the courts for relief. *See Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 803 (7th Cir. 2008) (noting litigation is "the last resort in resolving such disputes"). If the union takes an employee's grievance to arbitration, both the

employee and the employer are "bound by the result subject only to extremely narrow judicial review." *Id*. at 804.

Section 301 is an exception to the national labor policy, in that it allows an employee to seek relief in federal court when a union breaches its duty to represent him fairly during private dispute resolution.[5] *See id*. at 803-04. Thus, an employee may bring a Section 301 claim if "his union completely bungles (or intentionally sabotages) an otherwise meritorious grievance" during the arbitration process. *Truhlar,* 600 F.3d at 891 (citation omitted). In such case, the employee may file a "hybrid" suit alleging that his union breached its duty of fair representation and that his employer breached the collective bargaining agreement. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983). The two claims are "inextricably interdependent." *Id*. at 164. To prevail against the employer or the union, the employee "must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id*. at 165 (quotation omitted).

---

[5] Section 301 of the LMRA states in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . .

29 U.S.C. § 185(a).

The employee need not sue both the union and the employer, but he must make the showing against the union to proceed. *See id*.

Where an employee brings a state law claim, Section 301 preempts the application of state law "only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *see In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 285–286 (7th Cir. 2004) ("preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA"). Wrongful termination claims have been preempted by Section 301 where the claim's resolution turned on the interpretation of a collective bargaining agreement. *See, e.g., Chapple v. Nat'l Starch & Chemical Co. & Oil*, 178 F.3d 501, 508–09 (7th Cir. 1999) (wrongful discharge claim preempted where the claim required the court to decide if the employer was acting within the scope of the collective bargaining agreement).

Applying these principals, the Court concludes that Scott's wrongful discharge claim is preempted by Section 301, and is properly characterized as a hybrid Section 301 claim. The complaint alleges that Scott was wrongfully terminated for "violat[ing] the medical leave policy," and that he wasn't allowed to return to work "under their policy." (DE# 1 at 6-7.)

The complaint asserts that "a grievance was filed" the day after Scott was terminated, "but no steps or meetings were held for 320 day[s]," and the parties went "straight to mediation." (*Id.* at 7.) According to the complaint, Scott's grievance was denied and Scott was told there were "no other steps" after mediation except to agree to a settlement pursuant to which he had to "drop all pending charges . . . against the defendants and the union." (*Id.*) These allegations allude to breaches of the terms of the CBA by both the Defendants and the Union, including the CBA's "Medical Leave of Absence" policy (*see* DE# 22-1 at 34), and its "Grievance Procedure," which sets forth multiple "Grievance Steps." (*See id.* at 6-10.) As such, these allegations demonstrate that Scott's wrongful termination claim is inextricably intertwined with consideration of the CBA's terms. Because the CBA includes provisions for resolving employment disputes, Scott's claim is not actionable apart from a successful claim that the Union breached its duty of fair representation. *See Filippo v. N. Ind. Pub. Serv. Corp., Inc.,* 141 F.3d 744, 748 (7th Cir. 1998).

Thus, Scott's wrongful termination claim is a hybrid Section 301 claim.

Having determined that Scott's wrongful termination claim is indeed a hybrid Section 301 claim, the Court considers whether Scott has plead facts that show this claim is barred by the appropriate statute of limitations. Although a statute of limitations defense is not usually part of a Rule 12(b)(6) motion to dismiss, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

A hybrid Section 301 claim is governed by a six-month statute of limitations. *See DelCostello*, 462 U.S. at 172; *Chapple,* 178 F.3d at 505. The six-month limitations period begins to run when "a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple*, 178 F.3d at 505 (internal quotation and citation omitted). The application of the statute of limitations "'seems straightforward enough when a grievance has run its full course . . .' suggesting that the statute begins running at the time the award is handed down." *Freeman v. Local Union No. 135 Chauffeurs, Teamsters, Warehousemen & Helpers*, 746 F.2d 1316,

1319 n.5 (7th Cir. 1984) (quoting *DelCostello*, 462 U.S. at 166 n.16 (claim accrued when grievance committee's decision rendered)).

The limitations period "is tolled until intraunion remedies are exhausted, even if those remedies are ultimately determined to have been futile." *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees, & Mo. Pac. R.R. Co.*, 782 F.2d 674, 684 (7th Cir. 1986). "[T]olling occurs while a plaintiff pursues specific internal union remedies through the designated channels; it does not occur while the plaintiff seeks whatever relief might be available." *Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 329 (7th Cir. 1992). The policy behind the tolling rule is "to allow plaintiffs to exhaust internal union remedies without fear that later suits against the union for breach of the duty of fair representation will be time barred." *Id.* at 328; *see also Frandsen*, 782 F.2d at 681 (noting "the national labor policy of encouraging workers to pursue internal union remedies, while ensuring them a judicial forum in which to resolve disputes"); *Stevens v. Nw. Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 730 (7th Cir. 1994) ("A union may be willing to address and remedy a violation raised in even an untimely complaint . . . but would seldom have that opportunity if the complaining member has

everything to lose and nothing gain by staying within the system.").

Because Scott's hybrid Section 301 claim alleges that a grievance was filed on his behalf, the six-month statute of limitations is to be tolled until Scott's intra-union remedies are exhausted, even if those remedies were ultimately futile. *See Frandsen*, 782 F.2d at 684. Scott filed the complaint on April 4, 2014. (DE# 1.) If the complaint alleges that Scott's intra-union remedies were exhausted within the six months prior to filing (that is, sometime after October 4, 2013), it will not run afoul of the statute of limitations.

Unfortunately, the exact timing of the exhaustion of Scott's intra-union remedies is unclear. The complaint alleges that: (1) Scott's grievance was filed on April 24, 2013; (2) a period of 320 days passed during which Scott was not contacted; (3) mediation occurred; and (4) Scott's grievance was denied. (DE# 1 at 7.) The complaint does not allege *when* Scott's grievance was denied.[6]

Drawing all reasonable inferences in the light most favorable to Scott, his *pro se* complaint can be read as alleging that his grievance was mediated 320 days after it was filed - in

---

[6] While the Court has determined that it will not consider any documents submitted by the parties other than the CBA, the Court notes that even if it had considered these documents, they do not provide the date the grievance was denied.

or about March 2014, and that the grievance was denied sometime during or after mediation.[7] *See Ambrose*, 749 F.3d at 618 (courts are to construe *pro se* complaints liberally). The complaint's allegation that Scott was told there was "a denial of my grievance and . . . no other steps after mediation" other than settlement infers that the denial was a final decision. (DE# 1 at 7.) Because the complaint can reasonably be read as alleging that a final decision regarding Scott's grievance occurred after October 4, 2013, Scott has not plead facts that show his claim is barred by Section 301's six-month statute of limitations.

The Defendants argue that Scott's claim is untimely because Scott filed his complaint "more than six months after the Union's prolonged inaction put him on notice that it would not pursue his grievance." (DE# 17 at 5, DE# 20 at 6.) They concede that a grievance was filed, but focus on Scott's allegation that no steps or meetings were held for 320 days after filing, and argue that Scott knew or should have known by August 2013 that the Union would not process his grievance. (*See* DE# 29 at 3, DE# 30 at 4 (asserting that Scott's August 30, 2013 EEOC charge against the Union demonstrates his knowledge

---

[7] Scott's last surreply brief states the mediation occurred on March 17, 2014 (DE# 32 at 2). *See Help at Home, Inc. v. Med. Capital, L.L.C.,* 260 F.3d 748, 752-53 (7th Cir. 2001) (plaintiff "may add [facts] by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint.").

"that the Union would take no further action on his grievance").)  The Defendants do not address the allegations of the mediation or the denial of Scott's grievance in any of their briefs.

The Defendants cite to *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299 (7th Cir. 1983), and *Christiansen v. APV Crepaco, Inc.,* 178 F.3d 910 (7th Cir. 1999), as dispositive on this issue.  The Court finds these opinions to be inapposite.  In both *Metz* and *Christiansen*, the unions failed to file grievances on behalf of the plaintiffs within a specific time period set forth in the collective bargaining agreements.  The Seventh Circuit held that "when a collective bargaining agreement requires that all grievances be brought within a certain time period, 'under the terms of the collective bargaining agreement, the failure and refusal of the Union to file the grievance within the specified time period amounted to a final decision.'" *Christiansen*, 178 F.3d at 914 (quoting *Metz*, 715 F.2d at 303).

Here, in contrast, the complaint alleges that a grievance was filed on Scott's behalf.  The complaint further alleges that this grievance was mediated (albeit, after a significant delay), and was eventually denied.  It is reasonable to infer that the Union was involved in both the mediation and the denial of Scott's grievance.  Thus, while Defendants argue that Scott knew or should have known that the Union would take no further action

on his grievance after it was filed, the complaint alleges that the Union did, indeed, take such action.

Construed liberally, the *pro se* complaint can be read as asserting that, during the alleged "320 day" period prior to mediation, the Defendants and the Union failed to follow the proper procedures in processing Scott's grievance; it does not necessarily allege that the Defendants and the Union failed to process Scott's grievance at all. *See Konen v. Int'l Bhd. of Teamsters*, 255 F.3d 402, 406 (7th Cir. 2001) (claim was not time barred where evidence "was sufficiently vague about whether the Union had decided not to proceed to arbitration, and thus whether no further action would be taken on [plaintiff's] grievance") (quotation omitted); *see also Frandsen*, 782 F.2d at 682 ("In hindsight it may seem perfectly clear whether or not a claim could have been resolved by the union itself. But that clarity may be illusory to the layman in the midst of unfolding events.").

The Court finds that Scott has not plead facts that show his hybrid Section 301 claim is barred by Section 301's six-month statute of limitations. Therefore, Lear and the Individual Defendants' motions to dismiss this claim are **DENIED**.

As explained above, the Court finds Scott's wrongful
termination claim to be a hybrid Section 301 claim because it is
inextricably intertwined with consideration of the CBA's terms.
Section 301 claims "are confined to defendants who are
signatories of the collective bargaining agreement under which
they are brought. . . . [The LMRA] was not designed to impose
personal liability on employees of corporate organizations."
*Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir. 1982) (quoting
*Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th
Cir. 1980)); *see Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551,
554 (7th Cir. 1969) (affirming dismissal of wrongful discharge
claim in violation of a collective bargaining agreement where
defendant was not a party to the agreement); *see also Teamsters
Nat'l Auto. Transporters Indust. Negotiating Comm. v. Troha,* 328
F.3d 325, 329 (7th Cir. 2003) ("Since only parties to a contract
can violate it, a plaintiff cannot possibly allege that a non-
party violated a collective bargaining agreement").

Here, the complaint does not allege that any of the
Individual Defendants are parties to the CBA.[8] The complaint
does not describe any of the Individual Defendants, but rather,

---

[8] The Court observes that the CBA identifies Lear and the Union
as "both parties" and "the two parties" to the CBA. (DE# 22-1
at 1, 2.)

refers generally to "supervisors," "formans" [*sic*], "Lear's management team," and "Human Resources." (DE# 1 at 3, 4.) In his response brief, Scott asserts that the Individual Defendants are "people in management positions." (DE# 25 at 2.) Because the complaint lacks allegations that could bring the Individual Defendants within the scope of Section 301, it fails to state a claim for which relief could be granted. *See Loss*, 673 F.2d at 946-47 (affirming dismissal of Section 301(a) claim against individual defendant because he was not a party to the collective bargaining agreement).[9]   Therefore, Scott's hybrid Section 301 claim against the Individual Defendants is **DISMISSED.**

---

[9] The Court observes that the CBA's unsigned signature page includes individual defendant "Ryan Brueckner, Division Human Resource Director" ("Brueckner") as one of several signatories for Lear. (DE# 22-1 at 41.)   The introductory paragraph of the CBA states that Lear and the Union entered into the CBA "through the duly authorized representatives of both parties." (*Id.* at 1.)   "[W]here a CBA is executed on behalf of a corporation by an individual for whom the corporation is an alter ego, the controlling individual is the real employer and may be liable for breaches of the agreement on that basis." *Delange v. Curbow*, 2:06-CV-379-PPS-APR, 2010 WL 1936202, at *2 (N.D. Ind. May 12, 2010) (citing *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 460 (7th Cir. 1991) and *Int'l Union of Operating Eng'r, Local 150, AFL-CIO v. Centor Contractors, Inc.,* 831 F.2d 1309, 1312-13 (7th Cir. 1987)).   Here, the complaint does not contain any allegations inferring that Lear was Brueckner's alter ego, or other allegations that would warrant piercing the corporate veil. *See id.* at *3, *4 (dismissing LMRA claim against individual defendant who "signed the CBA only as an agent of [the party to the CBA], not in her individual capacity").

<u>CONCLUSION</u>

For the reasons set forth above, Lear Corporation's Partial Motion to Dismiss (DE# 16) is **DENIED**.  Individual Defendants Larry Payne, Barbara Sacha, Ryan Brueckner and Darrell Harper's Motion to Dismiss (DE# 19) is **GRANTED**.  The Individual Defendants are hereby **DISMISSED** from this lawsuit.


**DATED:  November 4, 2014**      **/s/ RUDY LOZANO, Judge**
                                 **United States District Court**